## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| YELLOW CORPORATION, *et al.*,[1] | ) | Case No. 23-11069 (CTG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## MOTION OF DEBTORS
## FOR ENTRY OF AN ORDER APPROVING
## (I) THE ADEQUACY OF THE DISCLOSURE STATEMENT,
## (II) THE SOLICITATION AND VOTING PROCEDURES,
## (III) THE FORMS OF BALLOTS AND NOTICES IN CONNECTION
## THEREWITH, AND (IV) CERTAIN DATES WITH RESPECT THERETO

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state the following in support of this motion:[2]

### Relief Requested

1.     The Debtors seek entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "Order"), granting the following relief:

     a.     ***Adequacy of the Disclosure Statement****. Approving the Fourth Amended
Disclosure Statement for the Fourth Amended Joint Chapter 11 Plan of
Yellow Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the
Bankruptcy Code Proposed by the Debtors and the Official Committee of
Unsecured Creditors [Docket No. 6747] (the "Disclosure Statement"), as*

---

[1]    A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/YellowCorporation. The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is: 11500 Outlook Street, Suite 400, Overland Park, Kansas 66211.

[2]    A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' Chapter 11 Cases, is set forth in the *Declaration of Matthew A. Doheny, Chief Restructuring Officer of Yellow Corporation, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 14] (the "First Day Declaration"). Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the *Fourth Amended Joint Chapter 11 Plan of Yellow Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors* [Docket No. 6746] (as may be amended, supplemented, or modified from time to time, the "Plan"), as applicable.

containing "adequate information" pursuant to section 1125 of the Bankruptcy Code;

b.   ***Solicitation and Voting Procedures***.   Approving procedures for (i) soliciting, receiving, and tabulating votes to accept or reject the Plan, (ii) voting to accept or reject the Plan, and (iii) filing objections to confirmation of the Plan (the "Solicitation and Voting Procedures"), substantially in the form attached to the Order as Exhibit 1;

c.   ***Notices of Non-Voting Status and Opt-In Form***.  Approving the (i) forms of notice to (a) Holders of Claims that are Unimpaired under the Plan and who are, pursuant to section 1126(f) of the Bankruptcy Code, conclusively presumed to accept the Plan; (b) Holders of Claims or Interests that are Impaired under the Plan and who are, pursuant to section 1126(g) of the Bankruptcy Code, conclusively deemed to reject the Plan; and (c) Holders of Claims or Interests that are subject to a pending objection by the Debtors and who are not entitled to vote the disputed portion of such Claims or Interests (collectively, the "Notices of Non-Voting Status") and (ii) the opt-in form (the "Opt-In Form" and together with the Notices of Non-Voting Status, the "Notices of Non-Voting Status and Opt-In Form"), substantially in the forms attached to the Order as Exhibit 2A, Exhibit 2B, and Exhibit 2C;

d.   ***Ballot***.  Approving the form of ballot that the Debtors will send to Holders of Claims entitled to vote to accept or reject the Plan, substantially in the form attached to the Order as Exhibit 3 (the "Ballot");

e.   ***Cover Letter***.  Approving the form of letter (the "Cover Letter") that the Debtors and the Committee will send to Holders of Claims entitled to vote to accept or reject the Plan recommending that such parties vote in favor of the Plan, substantially in the form attached to the Order as Exhibit 4;

f.   ***Voting Employee Letters***.  Approving the form of letter to former employees that are entitled to vote on the Plan (collectively, the "Voting Employee Letters"), substantially in the forms attached hereto as Exhibit 8A and Exhibit 8B, as applicable, which provides a breakdown of the Claimant's Claim across multiple Classes, including the portion of such entitled to priority treatment under section 507 of the Bankruptcy Code;

g.   ***Confirmation Hearing Notice***.  Approving the form and manner of notice of the Confirmation Hearing and the procedures for objecting thereto (the "Confirmation Hearing Notice"), substantially in the form attached to the Order as Exhibit 5;

h.   ***Plan Supplement Notice***.  Approving the notice related to the filing of the Plan Supplement, substantially in the form attached to the Order as Exhibit 6 (the "Plan Supplement Notice");

i.    **Assumption Notice**. Approving the form of notice to counterparties to Executory Contracts and Unexpired Leases that will be assumed by the Debtors (the "Assumption Notice"), substantially in the form attached to the Order as Exhibit 7;

j.    **Solicitation Packages**. Finding that the solicitation materials and documents included in the solicitation packages (the "Solicitation Packages") that will be sent to Holders of Claims entitled to vote to accept or reject the Plan comply with rules 2002(b) and 3017(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and

k.    **Confirmation Timeline**. Establishing the following dates and deadlines with respect to Confirmation of the Plan, subject to modification as necessary (the "Confirmation Timeline"):

| Event | Date | Description |
|---|---|---|
| Disclosure Statement Objection Deadline | August 26, 2025, at 4:00 p.m., prevailing Eastern Time | Deadline by which parties in interest may object to the Disclosure Statement and adequacy thereof. |
| Voting Record Date | August 26, 2025 | The date to determine (i) which Holders of Claims in the Voting Class are entitled to vote to accept or reject the Plan and (ii) whether Claims have been properly assigned or transferred under Bankruptcy Rule 3001(e) such that an assignee or transferee, as applicable, can vote to accept or reject the Plan as the Holder of a Claim or Interest. (the "Voting Record Date"). |
| Disclosure Statement Hearing Date | September 4, 2025, at 10:00 a.m., prevailing Eastern Time | Date of the hearing at which the Court will consider the relief requested in this Motion. |
| Solicitation Mailing Deadline | Ten (10) business days following entry of the Order | The deadline by which the Debtors must distribute (i) Solicitation Packages, including Ballots, to Holders of Claims entitled to vote to accept or reject the Plan and (ii) Notices of Non-Voting Status and Opt-In Forms (the "Solicitation Mailing Deadline"). |
| Publication Deadline | Three (3) business days following entry of the Order (or as soon as reasonably practicable thereafter) | The date by which the Debtors will submit the Confirmation Hearing Notice in a format modified for publication (such notice, the "Publication Notice," and such date, the "Publication Deadline"). |

| Event | Date | Description |
|---|---|---|
| Deadline to File Motion Pursuant to Bankruptcy Rule 3018(a) | September 26, 2025, at 4:00 p.m., prevailing Eastern Time | The deadline by which a claimant holding a Disputed Claim must file a motion with the Bankruptcy Court to temporarily allow its Claim in an amount that the Bankruptcy Court considers proper for voting to accept or reject the Plan (the "Rule 3018 Motion Deadline"). |
| Plan Supplement Filing Deadline | Seven (7) days prior to the Plan Objection Deadline (or as soon as reasonably practicable thereafter) | The date by which the Debtors shall file the Plan Supplement (the "Plan Supplement Filing Deadline"). |
| Voting Deadline, Opt-In Deadline | October 22, 2025, at 4:00 p.m., prevailing Eastern Time | The deadline by which all Ballots and Opt-In Forms must be properly executed, completed, and submitted so that they are **actually received** by Epiq Corporate Restructuring, LLC (the "Claims and Noticing Agent").[3] |
| Plan Objection Deadline | October 22, 2025, at 4:00 p.m., prevailing Eastern Time | The deadline by which parties in interest may file objections to confirmation of the Plan (the "Plan Objection Deadline"). |
| Deadline to File Voting Report | October 29, 2025 | The date by which the report tabulating the voting on the Plan (the "Voting Report") shall be filed with the Bankruptcy Court. |
| Confirmation Brief and Plan Objection Reply Deadline | Three (3) days prior to the Confirmation Hearing Date | The deadline by which the Debtors shall file their brief in support of confirmation of the Plan and reply to objections to confirmation of the Plan. |
| Confirmation Hearing Date | November 5, 2025, or such later date as may be scheduled | The date of the Confirmation Hearing (the "Confirmation Hearing Date"). |

## **Jurisdiction and Venue**

2.      The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference* from the United States District Court for the District of

---

[3]     An Order authorizing the Debtors to retain and employ Epiq Corporate Restructuring, LLC, to provide noticing and claims services and serve as Claims and Noticing Agent, was entered by the Bankruptcy Court on August 9, 2023 [Docket No. 170].

Delaware, dated February 29, 2012.  The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Bankruptcy Court in connection with this motion to the extent that it is later determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105, 1125, 1126, and 1128 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 2002, 3001, 3016, 3017, 3018, 3020, 6004, and 9006 of the Bankruptcy Rules, and Local Rules 2002-1, 3017-1, and 9006-1 of the Local Rules.

### Background

5.      On August 6, 2023 and continuing into August 7, 2023 (the "Petition Date"), certain of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. These Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 169].  The Debtors are managing their businesses and their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On August 16, 2023, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 269] (the "Committee" and together with the Debtors, the "Plan Proponents").[4]  No trustee or examiner has been appointed in these Chapter 11 Cases.

---

[4]      The U.S. Trustee has filed two subsequent amended notices of appointment to reflect the resignation of certain Committee members. *See* Docket Nos. 3430 and 5615.

## **Summary of the Plan**

6.      The Plan classifies Holders of Claims and Interests into the following Classes of Claims or Interest for all purposes, including with respect to voting and distributions under the Plan:

| Class | Claim/Interest | Treatment of Claim/ Interest | Status | Voting Rights |
|-------|----------------|------------------------------|--------|---------------|
| 1 | Secured Tax Claims | Except to the extent that a Holder of an Allowed Secured Tax Claim agrees to less favorable treatment with the Debtors and the Committee or as otherwise contemplated by the Liquidating Trust Agreement, in exchange for such Secured Tax Claim, on the first Distribution Date after the later to occur of (i) the Effective Date and (ii) the date such Claim becomes Allowed (or as otherwise set forth in the Plan), each Holder of a Secured Tax Claim shall receive, at the option of the Debtors and the Committee or as otherwise contemplated by the Liquidating Trust Agreement: (i) payment in full in Cash of such Holder's Allowed Secured Tax Claim, or (ii) equal semi-annual Cash payments commencing as of the Effective Date or as soon as reasonably practicable thereafter and continuing for five years, in an aggregate amount equal to such Allowed Secured Tax Claim, together with interest at the applicable non-default rate under non-bankruptcy law, subject to the option of the Liquidating Trustee to pay the entire amount of such Allowed Secured Tax Claim during such time period. | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | Other Secured Claims | Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment with the Debtors and the Committee or as otherwise contemplated by the Liquidating Trust Agreement, in exchange for such Allowed Other Secured Claim, on the first Distribution Date after the later to occur of (i) the Effective Date and (ii) the date such Claim becomes Allowed (or as otherwise set forth in the Plan), each Holder of an Allowed Other Secured Claim shall receive, at the option of the Debtors and the Committee or as otherwise contemplated by the Liquidating Trust Agreement: (i) payment in full in Cash of such Holder's Allowed Other Secured Claim; (ii) the collateral securing such Holder's Allowed Other Secured Claim; or (iii) such other treatment rendering such Holder's Allowed Other Secured Claim Unimpaired. | Unimpaired | Not Entitled to Vote (Presumed to Accept) |

| Class | Claim/Interest | Treatment of Claim/ Interest | Status | Voting Rights |
|---|---|---|---|---|
| 3 | Other Priority Claims | Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment with the Debtors and the Committee or as otherwise contemplated by the Liquidating Trust Agreement, in exchange for such Allowed Other Priority Claim, on the first Distribution Date after the later to occur of (i) the Effective Date and (ii) the date such Claim becomes Allowed (or as otherwise set forth in the Plan), each Holder of an Allowed Other Priority Claim, will either be satisfied in full, in Cash, or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code. | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 4A | Employee PTO/Commission Full Pay GUC Claims | Except to the extent that a Holder of an Allowed Employee PTO/Commission Full Pay GUC Claim agrees to less favorable treatment with the Debtors and the Committee or as otherwise contemplated by the Liquidating Trust Agreement, in exchange for such Allowed Employee PTO/Commission Full Pay GUC Claim, in one or more distributions (in the Liquidating Trustee's reasonable discretion) after the later to occur of (i) the Effective Date and (ii) the date such Claim becomes Allowed (or as otherwise set forth in the Plan), each Holder of an Allowed Employee PTO/Commission Full Pay GUC Claim will either be satisfied in full, in Cash, or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code. | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 4B | Convenience Class Claims | Except to the extent that a Holder of an Allowed Convenience Class Claim by amount or election agrees to less favorable treatment with the Debtors and the Committee or as otherwise contemplated by the Liquidating Trust Agreement, in exchange for such Allowed Convenience Class Claim, in one or more distributions (in the Liquidating Trustee's reasonable discretion) after the later to occur of (i) the Effective Date and (ii) the date such Claim becomes Allowed (or as otherwise set forth in the Plan), each Holder of an Allowed Convenience Class Claim, will either be satisfied in full, in Cash, or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code; provided that to the extent that a Holder of an Allowed Convenience Class Claim holds any joint and several liability claims, guaranty claims or other similar claims against more than one but less than all Debtors arising from or relating to the same obligations or liability as such Allowed Convenience Class Claim, such Holder shall only be entitled to a distribution on one Convenience Class Claim in full | Unimpaired | Not Entitled to Vote (Presumed to Accept) |

| Class | Claim/Interest | Treatment of Claim/ Interest | Status | Voting Rights |
|---|---|---|---|---|
| | | and final satisfaction of all such Claims. For the avoidance of doubt, Employee PTO/Commission Class 5 GUC Claims shall not be Convenience Class Claims. | | |
| 5 | General Unsecured Claims | Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment with the Debtors and the Committee or as otherwise contemplated by the Liquidating Trust Agreement, in exchange for such Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive (i) its Pro Rata share of the GUC Liquidating Trust Interests and as a Beneficiary shall receive, on the applicable Distribution Date, its Pro Rata share of Distributable Proceeds derived from the Liquidating Trust Assets available for distribution on each such Distribution Date as provided under the Plan and Liquidating Trust Agreement, plus (ii) if and only to the extent Distributable Proceeds are available after all Allowed General Unsecured Claims are paid in full, in Cash, a Beneficiary shall be entitled to receive Postpetition Interest from the Petition Date through and including the date of satisfaction of such Allowed General Unsecured Claim in full, in Cash; provided, a portion of Allowed Withdrawal Liability Claims may be reduced and/or subordinated to all other Allowed General Unsecured Claims in an amount as determined by a Final Order or as otherwise agreed to by the applicable claimant, the Debtors and the Committee or as otherwise contemplated by the Liquidating Trust Agreement. For the avoidance of doubt, the Holders of Allowed General Unsecured Claims shall receive the Postpetition Interest set forth in Article III.B.6 of the Plan on a pari pasu basis with Allowed Subordinated Withdrawal Liability Claims, if any. | Impaired | Entitled to Vote |
| 6 | Intercompany Claims | Allowed Intercompany Claims, to the extent not assumed pursuant to the terms of the Sale Transaction Documents, shall, at the election of the Debtors and the Committee or as otherwise contemplated by the Liquidating Trust Agreement, be (a) set off, settled, distributed, contributed, cancelled or released or (b) otherwise addressed at the option of the Liquidating Trust without any distribution; provided, however, that such election shall not adversely affect the treatment provided to Classes 4A, 4B, and 5. | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Reject) |

| Class | Claim/Interest | Treatment of Claim/ Interest | Status | Voting Rights |
|---|---|---|---|---|
| 7 | Intercompany Interests | Allowed Intercompany Interests shall, at the election of the Debtors and the Committee or as otherwise contemplated by the Liquidating Trust Agreement, be (a) set off, settled, addressed, distributed, contributed, merged, cancelled or released or (b) otherwise addressed at the option of the Liquidating Trust without any distribution; provided, however, that such election shall not adversely affect the treatment provided to Classes 4A, 4B, and 5. | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Reject) |
| 8 | Interests in Yellow Corporation | Except to the extent that a Holder of an Allowed Interest in Yellow Corporation agrees to less favorable treatment with the Debtors and the Committee or as otherwise contemplated by the Liquidating Trust Agreement, in exchange for such Allowed Interest in Yellow Corporation, each Holder of an Interest in Yellow Corporation shall receive its Pro Rata share of the Equity Liquidating Trust Interests and as a Beneficiary shall receive, on the applicable Distribution Date, and if and only to the extent Distributable Proceeds are available after all Allowed General Unsecured Claims are paid in full, including Postpetition Interest, its Pro Rata share of Distributable Proceeds derived from the Liquidating Trust Assets available for distribution on each such Distribution Date as provided under the Plan and Liquidating Trust Agreement. | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 9 | Section 510(b) Claims | Section 510(b) Claims, if any, shall be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and Holders of Section 510(b) Claims will not receive any distribution on account of such Section 510(b) Claims. | Impaired | Not Entitled to Vote (Deemed to Reject) |

7.      Based on the foregoing (and as discussed in detail herein), the Debtors are proposing to solicit votes to accept or reject the Plan from Holders of Claims in Class 5 (the "Voting Class").  The Debtors are **not** proposing to solicit votes from Holders of Claims or Interests in Classes 1, 2, 3, 4A, 4B, 6, 7, 8, and 9 (each a "Non-Voting Class" and collectively, the "Non-Voting Classes").  Accordingly, Holders of Claims or Interests in the Non-Voting Classes will not receive a Solicitation Package but instead will receive a Notice of Non-Voting

Status and Opt-In Form, except for Class 6 Intercompany Claims and Class 7 Intercompany Interests, which will receive neither a Solicitation Package nor a Notice of Non-Voting Status, as discussed below.

8.      The Disclosure Statement provides adequate information with respect to the Plan, ensuring that Holders of Claims entitled to vote on the Plan will receive information of a kind, and in sufficient detail, to make an informed judgment regarding acceptance or rejection of the Plan. The proposed schedule and procedures to confirm and consummate the Plan will move these Chapter 11 Cases forward in a timely manner while ensuring due process and providing for the procedural safeguards mandated under the Bankruptcy Code, Bankruptcy Rules, and Local Rules. Accordingly, the Debtors respectfully submit the relief requested in this motion should be approved.

## Basis for Relief

### I.      The Bankruptcy Court Should Approve the Disclosure Statement.

#### A.      The Standard of Approval of the Disclosure Statement.

9.      Pursuant to section 1125 of the Bankruptcy Code, the proponent of a proposed chapter 11 plan must provide "adequate information" regarding that plan to holders of impaired claims and interests entitled to vote on the plan. 11 U.S.C. § 1125. Specifically, section 1125(a)(1) of the Bankruptcy Code provides, in relevant part, as follows:

> "[A]dequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan.

11 U.S.C. § 1125(a)(1).

10.    Courts in several circuits have stated that the primary purpose of a disclosure statement is to provide adequate information such that creditors and interest holders affected by a proposed plan can make an informed decision regarding whether or not to vote for the plan. *See, e.g., Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 321–22 (3d Cir. 2003) (providing that a disclosure statement must contain "adequate information to enable a creditor to make an informed judgment about the Plan" (internal quotations omitted)); *Century Glove, Inc. v. First Am. Bank of N.Y.*, 860 F.2d 94, 100 (3d Cir. 1988) ("[Section] 1125 seeks to guarantee a minimum amount of information to the creditor asked for its vote."); *In re Monnier Bros.*, 755 F.2d 1336, 1342 (8th Cir. 1985) ("The primary purpose of a disclosure statement is to give the creditors the information they need to decide whether to accept the plan."); *In re Phoenix Petrol., Co.*, 278 B.R. 385, 392 (Bankr. E.D. Pa. 2001) ("[T]he general purpose of the disclosure statement is to provide 'adequate information' to enable 'impaired' classes of creditors and interest holders to make an informed judgment about the proposed plan and determine whether to vote in favor of or against that plan."); *In re A. H. Robins Co., Inc.*, 880 F.2d 694, 696 (4th Cir. 1989) (stating that the disclosure statement must provide "information of a kind, and in sufficient detail . . . that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan."); *In re Unichem Corp.*, 72 B.R. 95, 97 (Bankr. N.D. Ill. 1987) ("The primary purpose of a disclosure statement is to provide all material information which creditors and equity security holders affected by the plan need in order to make an intelligent decision whether to vote for or against the plan."). Congress intended that such informed judgments would be needed to both negotiate the terms of, and vote on, a chapter 11 plan. *See Century Glove*, 860 F.2d at 100.

11.    "Adequate information" is a flexible standard, based on the facts and circumstances of each case.  11 U.S.C. § 1125(a)(1) ("'[A]dequate information' means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . ."); *see Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) ("From the legislative history of § 1125 we discern that adequate information will be determined by the facts and circumstances of each case."); *First Am. Bank of N.Y. v. Century Glove, Inc.*, 81 B.R. 274, 279 (D. Del. 1988) (noting that adequacy of disclosure for a particular debtor will be determined based on how much information is available from outside sources); *In re Lisanti Foods, Inc.*, 329 B.R. 491, 507 (Bankr. D.N.J. 2005) ("The information required will necessarily be governed by the circumstances of the case."); *In re River Vill. Assoc.*, 181 B.R. 795, 804 (E.D. Pa. 1995) ("[T]he Bankruptcy Court is thus given substantial discretion in considering the adequacy of a disclosure statement."); *In re Phx. Petrol. Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) (same); S. Rep. No. 95-989, at 121 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5907 ("The information required will necessarily be governed by the circumstances of the case.").

12.    In making a determination as to whether a disclosure statement contains adequate information as required by section 1125 of the Bankruptcy Code, courts typically look for disclosures related to topics such as:

    a.    the events that led to the filing of a bankruptcy petition;

    b.    the relationship of the debtor with its affiliates;

    c.    a description of the available assets and their value;

    d.    the debtor's anticipated future performance;

    e.    the source of information stated in the disclosure statement;

    f.    the debtor's condition while in chapter 11;

g.    claims asserted against the debtor;

h.    the estimated return to creditors under a chapter 7 liquidation of the debtor;

i.    the future management of the debtor;

j.    the chapter 11 plan or a summary thereof;

k.    financial information, valuations, and projections relevant to a creditor's decision to accept or reject the chapter 11 plan;

l.    information relevant to the risks posed to creditors under the plan;

m.    the actual or projected realizable value from recovery of preferential or otherwise avoidable transfers;

n.    litigation likely to arise in a nonbankruptcy context; and

o.    tax attributes of the debtor.

*See In re U.S. Brass Corp.*, 194 B.R. 420, 424–25 (Bankr. E.D. Tex. 1996); *see also In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170–71 (Bankr. S.D. Ohio 1988) (listing the factors courts have considered in determining the adequacy of information provided in a disclosure statement); *In re Metrocraft Pub. Serv., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984) (same). Disclosure regarding all topics is not necessary in every case. *See U.S. Brass*, 194 B.R. at 424; *see also Phx. Petrol.*, 278 B.R. at 393 ("[C]ertain categories of information which may be necessary in one case may be omitted in another; no one list of categories will apply in every case.").

**B.    The Disclosure Statement Contains Adequate Information in Accordance with Section 1125 of the Bankruptcy Code.**

13.    The Disclosure Statement provides "adequate information" to allow Holders of Allowed Claims in the Voting Class to make informed decisions about whether to vote to accept or reject the Plan.  Specifically, the Disclosure Statement contains information that courts consider "adequate information," including:

a.    ***Questions and Answers Regarding the Disclosure Statement and the Plan***.
A list commonly asked questions regarding the Disclosure Statement, Plan,

and Chapter 11 Cases, which are described in detail in <u>Article III</u> of the Disclosure Statement.

b.    ***Overview of the Plan***.  A summary of key provisions of the Plan, which are described in detail in <u>Article IV</u> of the Disclosure Statement;

c.    ***Release, Injunction, and Exculpation Provisions of the Plan***. A description of the entities subject to an injunction under the Plan and the acts that they are enjoined from pursuing, including bolded language related to the Debtors' Release, Third-Party Release, Exculpation, and Injunction which are described in <u>Article III.K</u> and <u>Article IV.H</u> of the Disclosure Statement;

d.    ***The Debtors' Corporate History, Structure, and Business Overview.*** An overview of the Debtors' corporate history, business operations, assets, organizational structure, and capital structure, which are described in detail in <u>Article V</u> of the Disclosure Statement;

e.    ***Events Leading to these Chapter 11 Filings***.  An overview of the events leading to the commencement of the Debtors' Chapter 11 Cases, which are described in detail in <u>Article VI</u> of the Disclosure Statement;

f.    ***Material Developments and Anticipated Events of the Chapter 11 Cases***. An overview of key components of the Debtors' Chapter 11 Cases, which are described in detail in <u>Article VII</u> of the Disclosure Statement;

g.    ***Risk Factors***.  Certain risks associated with the wind-down of the Debtors' businesses, as well as certain risks associated with forward-looking statements and an overall disclaimer as to the information provided by and set forth in the Disclosure Statement, which are described in <u>Article VIII</u> of the Disclosure Statement;

h.    ***Solicitation and Voting Procedures***.  A description of the procedures for soliciting votes to accept or reject the Plan and voting on the Plan, which are described in <u>Article IX</u> of the Disclosure Statement;

i.    ***Confirmation of the Plan***.  Confirmation procedures and statutory requirements for Confirmation and Consummation of the Plan, which are described in <u>Article X</u> of the Disclosure Statement;

j.    ***Material United States Federal Income Tax Consequences.***  A description of certain U.S. federal income tax law consequences of the Plan, which are described in <u>Article XI</u> of the Disclosure Statement;

k.    ***Recommendation of the Plan Proponents***.  A recommendation by the Plan Proponents that Holders of Claims in the Voting Class should vote to accept the Plan, stated in <u>Article XII</u> of the Disclosure Statement; and

14.     Based on the foregoing, the Debtors submit, that the Disclosure Statement complies with all aspects of section 1125 of the Bankruptcy Code and addresses the information set forth above in a manner that provides adequate information to Holders of Claims entitled to vote to accept or reject the Plan.  Accordingly, the Debtors submit that the Disclosure Statement contains "adequate information" and therefore should be approved.

   **C.     The Disclosure Statement Provides Sufficient Notice of Release, Exculpation, and Injunction Provisions in the Plan**.

15.     Bankruptcy Rule 3016(c) requires that, if a plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code, the plan and disclosure statement must describe, in specific and conspicuous language, the acts to be enjoined and the entities subject to the injunction. Fed. R. Bankr. P. 3016(c).

16.     Article IX of the Plan and Article III.K and Article IV.H of the Disclosure Statement describe in detail the entities that may be subject to an injunction under the Plan and Disclosure Statement and the acts that they may be enjoined from pursuing including bolded language related to the Release of Liens, Debtor Releases, Third-Party Releases, Exculpation, and Injunction.  Further, the language in Article IX of the Plan and Article IV.H of the Disclosure Statement is in bold, making it conspicuous to anyone who reads it.  Accordingly, the Debtors respectfully submit that the Disclosure Statement complies with Bankruptcy Rule 3016(c) by conspicuously describing the conduct and parties that may be enjoined by the Plan.

   **D.     The Disclosure Statement Provides for Sufficient Notice of the Convenience Claim Election**.

17.     As set forth in the Plan and described in Article III.E of the Disclosure Statement, the Plan provides Convenience Class Claim treatment for (a) any Allowed General Unsecured Claim in an amount less than $7,500 that is not (i) an Administrative Claim, (ii) a Priority Claim, (iii) a Secured Tax Claim, or (iv) an Employee PTO/Commission Class 5 GUC Claim and (b) any

Allowed General Unsecured Claim where a Holder of such Claim elects on its Ballot to treat their Claim as a Convenience Class Claim (the "Convenience Claim Election"), including, if applicable, reducing its Allowed General Unsecured Claim to $7,500; *provided*, *however*, that no claims asserted by a current or former employee may be a Convenience Class Claim.  As further described in Article III.E of the Disclosure Statement, Holders making the Convenience Claim Election will have their claim reduced to $7,500 and be treated as a Class 4B Convenience Class Claim. Holders of Class 4B Convenience Class Claims and Holders making the Convenience Claim Election will be entitled to a Cash payment of their Allowed Convenience Class Claim (the "Convenience Class Claim Recovery"), which may be fulfilled in one or more distributions.  Holders of Allowed Convenience Class Claims and Holders making the Convenience Claim Election will not be entitled to additional distributions above the Holder's applicable Convenience Claim amount (whether by allowance or election) and may not revoke their Convenience Claim Election.

II.    **The Bankruptcy Court Should Approve the Ballot, the Confirmation Timeline, and the Forms of Notices Related to Solicitation**.

A.    **The Bankruptcy Court Should Approve the Voting Record Date, Solicitation Mailing Deadline, and Voting Deadline**.

18.    Bankruptcy Rule 3017(d) provides that, for the purposes of soliciting votes in connection with the confirmation of a plan, "creditors and equity security holders shall include holders of stocks, bonds, debentures, notes, and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing." Fed. R. Bankr. P. 3017(d). Bankruptcy Rule 3018(a) contains a similar provision regarding determination of the record date for voting purposes. Fed. R. Bankr. P. 3018(a).  Additionally, Bankruptcy Rule 3017(c) provides that before approving the disclosure statement, the Bankruptcy Court must fix a time within which the holders of claims

and interests may accept or reject a plan and may fix a date for the hearing on confirmation of a plan. *See* Fed. R. Bankr. P. 3017(c).

19.     The Debtors request that the Bankruptcy Court exercise its authority under Local Rule 3017-1 and Bankruptcy Rules 3017(c), 3017(d), and 3018(a) to establish, subject to the Bankruptcy Court's availability, (i) **August 26, 2025**, as the Voting Record Date; (ii) **ten (10) business days following the entry of the Order** as the Solicitation Mailing Deadline; and (iii) **October 22, 2025, at 4:00 p.m., prevailing Eastern Time**, as the Voting Deadline. Moreover, the Debtors propose that, with respect to any transferred Claim, the transferee shall be entitled to receive a Solicitation Package and, if the Holder of such Claim is entitled to vote with respect to the Plan, cast a Ballot on account of such Claim only if: (a) all actions necessary to effectuate the transfer of the Claim pursuant to Bankruptcy Rule 3001(e) have been completed by the Voting Record Date or (b) the transferee files by the Voting Record Date (i) the documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (ii) a sworn statement of the transferor supporting the validity of the transfer. In the event a Claim is transferred after the Voting Record Date, the transferee of such Claim shall be bound by any vote on the Plan made by the Holder of such Claim as of the Voting Record Date.

20.     Furthermore, for any Holder seeking to challenge the allowance of its Claim for voting purposes, the Debtors request that the Bankruptcy Court exercise its authority under Local Rule 3017-1 and Bankruptcy Rules 3017(c), 3017(d), and 3018(a) to establish, subject to the Bankruptcy Court's availability, **September 26, 2025, at 4:00 p.m., prevailing Eastern Time**, as the deadline to file a motion for an order temporarily allowing such Claim in a different amount for purposes of voting to accept or reject the Plan (a "Rule 3018 Motion"). Furthermore, the Debtors request that the Court direct that all Rule 3018 Motions must (a) be made in writing,

(b) conform to the Bankruptcy Rules, the Local Rules, and any orders of the Bankruptcy Court, (c) state, with particularity, the legal and factual bases supporting the Rule 3018 Motion, and (d) be filed with the Bankruptcy Court (contemporaneously with a proof of service) and served upon the notice parties so as to be **actually received** on or before the 3018 Motion Deadline.

21.     The Debtors request that, after the Debtors distribute Solicitation Packages to Holders of Claims entitled to vote on the Plan, the Bankruptcy Court requires that all Holders of Claims entitled to vote on the Plan complete and submit their Ballots so that they are **actually received** by the Claims and Noticing Agent on or before the Voting Deadline.  Similarly, Holders of Claims or Interests who wish to opt in to the Third-Party Release must complete and submit the Opt-In Form so that it is **actually received** by the Claims and Noticing Agent on or before the Opt-In Deadline.

22.     The foregoing timing and materials will afford Holders of Claims entitled to vote on the Plan at least twenty-eight (28) days to review and analyze such materials and subsequently make an informed decision as to whether to vote to accept or reject the Plan before the Voting Deadline consistent with the requirements of the applicable Bankruptcy Rules[5]—in fact, Holders of Claims entitled to vote on the Plan will have at least [42] days to vote to accept or reject the Plan. Accordingly, the Debtors request that the Bankruptcy Court approve the form of, and the Debtors' proposed procedures for distributing, the Solicitation Packages to the Holders of Claims in the Voting Class and the deadline for Holders of Claims and Interests to vote to accept or reject the Plan and/or return Opt-In Forms, as applicable.

---

[5]   *See* Fed. R. Bankr. P. 3017(d) (after approval of a disclosure statement, the debtor must transmit the plan, the approved disclosure statement, a notice of the time within which acceptances and rejections of such plan may be filed, and any other information that the court may direct to certain holders of claims).  Nonetheless, the Debtors request authority to extend the Voting Deadline in their sole discretion (with the consent of the Committee, such consent not to be unreasonably withheld) and without further order of the Bankruptcy Court.

**B.      The Bankruptcy Court Should Approve the Form of the Ballots**.

23.      Bankruptcy Rule 3018(c) requires that "[a]n acceptance or rejection shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent, and conform to the appropriate Official Form." Fed. R. Bankr. P. 3018(c).  In accordance with Bankruptcy Rule 3018(c), the Debtors have prepared and customized the Ballots.  Although based on Official Form B 314, the Ballot has been modified to (a) address the particular circumstances of these Chapter 11 Cases, and (b) include certain additional information that is relevant and appropriate for Claims in the Voting Class.  The proposed Ballot for the Voting Class is annexed as <u>Exhibit 3</u> to the Order.  The Debtors respectfully submit that the form of the Ballot complies with Bankruptcy Rule 3018(c) and, therefore, should be approved.

**C.      The Bankruptcy Court Should Approve the Form and Distribution of the Solicitation Packages to Holders of Claims Entitled to Vote on the Plan**.

24.      Bankruptcy Rule 3017(d) specifies the materials to be distributed to holders of allowed claims and/or equity interests upon approval of a disclosure statement, including the court-approved plan and disclosure statement and notice of the time within which acceptances and rejections of the plan may be filed.  Fed. R. Bankr. P. 3017(d).

25.      In accordance with this requirement, the Debtors propose to send the Solicitation Packages to provide Holders of Claims in the Voting Class with the information they need to be able to make informed decisions with respect to how to vote on the Plan.  Specifically, on or before the Solicitation Mailing Deadline, the Debtors will cause the Solicitation Packages to be distributed by e-mail, where available, and/or first-class mail through the Claims and Noticing Agent to such Holders of Claims in the Voting Class.

26.     Each Solicitation Package will include the following materials, as applicable:

a.      a copy of the Solicitation and Voting Procedures, substantially in the form attached to the Order as <u>Exhibit 1</u>;

b.      the form of Ballot, substantially in the form of the Ballot attached to the Order as <u>Exhibit 3</u>, together with detailed voting instructions and instructions on how to submit the Ballot;

c.      the Debtors' and the Committee's joint Cover Letter, substantially in the form attached to the Order as <u>Exhibit 4</u>, which describes the contents of the Solicitation Package and urges Holders of Claims in the Voting Class to vote to accept the Plan;

d.      the Voting Employee Letters, substantially in the form attached to the Order as <u>Exhibit 8A</u> and <u>Exhibit 8B</u>, which provides a breakdown of the Claimant's Claim across multiple Classes, including the portion of such entitled to priority treatment under section 507 of the Bankruptcy Code;

e.      the Confirmation Hearing Notice, substantially in the form attached to the Order as <u>Exhibit 5</u>;

f.      the Disclosure Statement (and exhibits thereto, including the Plan);

g.      the Order granting the relief requested herein (without exhibits, except for the Solicitation and Voting Procedures);

h.      a pre-addressed, postage pre-paid reply envelope;[6] and

i.      any additional documents that the Bankruptcy Court has ordered to be made available to Holders of Claims in the Voting Class.

27.     The Debtors request that they be authorized to distribute the Plan, the Disclosure Statement, and the Order (without exhibits, except for the Solicitation and Voting Procedures) to Holders of Claims entitled to vote on the Plan in electronic format (*i.e.*, via e-mail, hyperlink and/or on a flash drive, as applicable). The Ballot, the Cover Letter, the Solicitation and Voting Procedures, and the Confirmation Hearing Notice will be provided in electronic format for those parties receiving service by e-mail, and paper format for those parties receiving service by

---

[6]     The Debtors will provide pre-addressed, postage pre-paid reply envelopes only to those holders who receive a Ballot directly from the Debtors.

first-class mail. Distribution in this manner will translate into significant monetary savings for the Debtors' estates (the Plan, the Disclosure Statement, and the proposed Order, collectively, are approximately 250 pages) by reducing printing and postage costs. Bankruptcy courts in this district have permitted debtors to transmit solicitation documents in electronic format in other large chapter 11 cases in the interest of saving printing and mailing costs. *See, e.g.*, *In re American Tire Distributors, Inc.*, No. 24-12391 (CTG) (Bankr. D. Del. Feb. 19 2025) (authorizing the debtors to distribute solicitation packages via e-mail where e-mail addresses were available); *In re Vyaire Med., Inc.,* No. 24-11217 (BLS) (Bankr. D. Del. Oct. 2, 2024) (same); *In re SunPower Corp.*, No. 24-11649 (CTG) (Bankr. D. Del. Sept. 30, 2024) (same); *In re Appgate, Inc.*, No, 24-10956 (CTG) (Bankr. D. Del. May 9, 2024) (authorizing the debtors to distribute the solicitation package, notices of non-voting status and Opt-In forms via email); *In re MVK Farmco LLC*, No. 23-11721 (LSS) (Bankr. D. Del. Dec. 28, 2023) (authorizing the debtors to distribute the plan and disclosure statement by providing access to them through the debtors' restructuring website). Accordingly, the Debtors believe that their proposed notice and service procedures are in the best interest of the Debtors and their stakeholders and maximize recoveries under the Plan.

28.     Additionally, the Debtors will provide complete Solicitation Packages (excluding the Ballot) to the U.S. Trustee (in paper format) and all parties on the Master Service List (in electronic form) as of the Voting Record Date. Any party that receives the materials in electronic format but would prefer paper format may contact the Claims and Noticing Agent and request paper copies of the corresponding materials previously received in electronic format (to be provided at the Debtors' expense). The Debtors will not provide Solicitation Packages to: (a) Holders of Claims that have already been paid in full during the Chapter 11 Cases or that are otherwise paid in full in the ordinary course of business pursuant to an order previously entered by

this Bankruptcy Court; (b) any party to whom the notice of this motion was sent but was subsequently returned as undeliverable without a forwarding address by the Voting Record Date; (c) the holders of Class 6 (Intercompany Claims) and Class 7 (Intercompany Interests); or (d) parties that receive a Notice of Non-Voting Status, as applicable.

29.    The Debtors respectfully request that the Claims and Noticing Agent be authorized (to the extent not authorized by another order of the Bankruptcy Court) to assist the Debtors in: (a) distributing the Solicitation Packages; (b) receiving, tabulating, and reporting on Ballots cast to accept or reject the Plan by Holders of Claims against the Debtors; (c) responding to inquiries from Holders of Claims or Interests and other parties-in-interest relating to the Disclosure Statement, the Plan, the Ballot, the Solicitation Packages, the Notices of Non-Voting Status and Opt-In Forms, and all other related documents and matters related thereto, including the procedures and requirements for voting to accept or reject the Plan and for objecting to confirmation of the Plan; (d) soliciting votes on the Plan; and (e) if necessary, contacting creditors who submit incomplete or otherwise deficient Ballots to make a reasonable effort to cure such deficiencies, as the Debtors and/or the Claims and Noticing Agent deem necessary and applicable; *provided that* neither the Debtors nor any other Person or Entity will be under any duty to contact such parties to provide notification of defects or irregularities with respect to delivered Ballots other than as provided in the Voting Report.

30.    The Debtors also request a waiver of: (i) any requirement to re-mail undeliverable Solicitation Packages or other undeliverable solicitation-related notices that were returned marked "undeliverable," "moved—no forwarding address," or otherwise returned; and (ii) any obligation for the Debtors or the Claims and Noticing Agent to conduct any additional research for updated

addresses based on undeliverable Solicitation Packages or other undeliverable solicitation-related notices.

31.     Given the timing considerations and administrative costs associated with tabulating hard copy Ballots, in addition to accepting hard copy Ballots via first-class mail, overnight courier, and hand delivery, the Debtors request authorization to accept electronic Ballots ("E-Ballots") via electronic, online transmissions through a customized online balloting portal on the Debtors' case website maintained by the Claims and Noticing Agent (the "E-Ballot Portal").  Ballots submitted via the E-Ballot Portal may be electronically signed and submitted. Instructions for electronic, online transmission of Ballots are set forth on the form of Ballot. The encrypted ballot data and audit trail created by such electronic submission shall become part of the record of any Ballot submitted in this manner and the creditor's electronic signature will be deemed to be immediately legally valid and effective.

32.     All votes to accept or reject the Plan must be cast by using the appropriate Ballot and/or voting instructions. All Ballots must be properly executed, completed, and delivered according to the voting instructions included on the Ballot via: (i) first-class mail, in the return envelope provided with each Ballot; (ii) overnight delivery; (iii) personal delivery; or (iv) the E-Ballot Portal, so that the Ballots are **actually received** by the Claims and Noticing Agent no later than the Voting Deadline at the return address set forth in the applicable Ballot. Each Ballot contains detailed instructions that describe the appropriate means of Ballot submission.

D.     **The Bankruptcy Court Should Approve the Confirmation Hearing Notice**.

33.     The Confirmation Hearing Notice includes the following: (a) instructions as to how to view or obtain copies of the Disclosure Statement (including the Plan and the other exhibits attached thereto), the Order, and all other materials in the Solicitation Package (excluding the Ballot) from the Claims and Noticing Agent's and/or the Bankruptcy Court's website via PACER;

23

(b) notice of the Voting Deadline; (c) notice of the date by which the Debtors will file the Plan Supplement; (d) notice of the Plan Objection Deadline; and (e) notice of the Confirmation Hearing Date and information related thereto. The Debtors will serve the Confirmation Hearing Notice on all known Holders of Claims or Interests and the 2002 List (regardless of whether such parties are entitled to vote on the Plan) no later than the Solicitation Mailing Deadline.

34.      Bankruptcy Rule 2002(l) permits the Bankruptcy Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice." Fed. R. Bankr. P. 2002(l). Therefore, in addition to the foregoing distribution of the Confirmation Hearing Notice, the Debtors will publish the Publication Notice in the *New York Times* (national edition) and *The Globe and Mail* no later than the Publication Deadline. The Debtors believe that the Publication Notice will provide sufficient notice of, among other things, the entry of the Order, the Voting Deadline, the Plan Objection Deadline, and the Confirmation Hearing to parties who did not otherwise receive notice thereof by mail. Additionally, service of the Confirmation Hearing Notice and publication of the Publication Notice comports with the requirements of Bankruptcy Rule 2002 and should be approved.

**E.      The Bankruptcy Court Should Approve the Plan Supplement Notice**.

35.      Article I.A of the Plan defines "Plan Supplement" to mean the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan that shall be reasonably acceptable to the Committee (as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof with the reasonable consent of the Committee and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be Filed initially by the Debtors no later than the date that is (a) seven days prior to the earlier of (i) the Voting Deadline or (ii) the deadline to object to Confirmation of the Plan or (b) such later date as may be approved by the Bankruptcy Court, and may be further amended thereafter, including the

following to the extent applicable: (a) the Schedule of Assumed Executory Contracts and Unexpired Leases; (b) the Schedule of Retained Causes of Action; (c) the identities of the Liquidating Trustee and the Liquidating Trust Board of Managers; (d) the Liquidating Trust Agreement; and (e) any additional documents Filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement.

36.     To ensure that all Holders of Claims or Interests receive adequate notice of the Debtors' filing of the Plan Supplement, the Debtors propose to send the Plan Supplement Notice on the date the Debtors file the Plan Supplement, or as soon as practicable thereafter.  Accordingly, the Plan Supplement Notice should be approved.

**F.     The Bankruptcy Court Should Approve the Forms of Notices to Non-Voting Classes and Opt-In Form**.

37.     As discussed above, the Non-Voting Classes are not entitled to vote on the Plan. As a result, they will not receive Solicitation Packages and, instead, the Debtors propose that such parties receive a Notice of Non-Voting Status and Opt-In Form.  Specifically, in lieu of solicitation materials, the Debtors propose to provide the following to Holders of Claims or Interests in Non-Voting Classes:

| Class | Status | Treatment |
|---|---|---|
| Class 1, Class 2, Class 3, Class 4A, Class 4B | Unimpaired—Presumed to Accept | Holders of Claims that are presumed to accept the Plan are not entitled to vote. As such, Holders of such Claims, will receive a Notice of Non-Voting Status and Opt-In Form, substantially in the form attached to the Order as Exhibit 2A, in lieu of a Solicitation Package. |

| Class | Status | Treatment |
|---|---|---|
| Class 8, Class 9 | Impaired—Deemed to Reject[7] | Holders of Claims and Interests that are deemed to reject the Plan are not entitled to vote. As such, Holders of such Claims or Interests, as applicable, will receive a Notice of Non-Voting Status and Opt-In Form, substantially in the form attached to the Order as <u>Exhibit 2B</u>, in lieu of a Solicitation Package. |
| N/A | Disputed Claims | Holders of Claims or Interests that are subject to a pending objection filed by the Debtors are not entitled to vote the disputed portion of their Claim or Interest. As such, Holders of such Claims, will receive a Notice of Non-Voting Status and Opt-In Form, substantially in the form attached to the Order as <u>Exhibit 2C</u>, in lieu of a Solicitation Package. |

38.    In light of the fact that the Intercompany Claims and Intercompany Interests are all held by the Debtors or affiliates of the Debtors, the Debtors will not provide the Holders in Class 6 (Intercompany Claims) or Class 7 (Intercompany Interests) with a Solicitation Package or any other type of notice in connection with the solicitation.

39.    The Notices of Non-Voting Status and Opt-In Form will include, among other things: (a) instructions as to how to view or obtain copies of the Disclosure Statement (including the Plan and the other exhibits attached thereto), the Order, and all other materials in the Solicitation Package (excluding the Ballot) from the Claims and Noticing Agent and/or the Bankruptcy Court's website via PACER; (b) notice to recipients of their status as Holders or potential Holders of Claims or Interests in Non-Voting Classes; (c) a disclosure regarding the settlement, release, exculpation, and injunction language set forth in <u>Article IX</u> of the Plan; and

---

[7]    To the extent a Proof of Claim is filed that is based solely on a Holder's equity Interests or the losses thereto, such Holder will be classified as a Class 8 claimant and such Claim will be treated in accordance with Class 8 and not entitled to vote on the Plan.

(d) the Opt-In Form by which Holders can elect to opt in to the Third-Party Release set forth in Article IX.C of the Plan.

40.     In addition to their Notice of Non-Voting Status and Opt-In Form, former employees that are not entitled to vote on the Plan will receive an additional letter (collectively, the "Non-Voting Employee Letters," and together with the Voting Employee Letters, the "Employee Letters"), substantially in the forms attached to the Order as Exhibit 8C and Exhibit 8D, and which describe the split between the Class 3 Other Priority Claim portion and the Class 4A Employee PTO/Commission Full Pay GUC Claim portion of the Claim Holder's Claim are approved.

41.     Given the attendant timing considerations associated with tabulating Opt-In Forms, in addition to accepting hard copy Opt-In Forms via first-class mail, overnight courier, and hand delivery, the Debtors request authorization to accept Opt-In Forms electronically through the Opt-In Portal. Parties may electronically sign and submit the Opt-In Forms instantly. Instructions for electronic, online transmission of Opt-In Forms are set forth on the Opt-In Forms. The encrypted audit trail created by such electronic submission shall become part of the record of any Opt-In Form submitted in this manner and the creditor's electronic signature will be deemed to be immediately legally valid and effective.

42.     The Debtors believe that mailing the Notices of Non-Voting Status and Opt-In Form in lieu of Solicitation Packages satisfies the requirements of Bankruptcy Rule 3017(d). Accordingly, unless the Bankruptcy Court orders otherwise, the Debtors do not intend to distribute Solicitation Packages to Holders of Claims or Interests in the Non-Voting Classes.

**G.    The Bankruptcy Court Should Approve Notices to Contract and Lease Counterparties**.

43.    <u>Article V.A</u> of the Plan provides that each of the Debtors' Executory Contracts and Unexpired Leases not previously assumed, assumed and assigned, or rejected, shall be deemed automatically rejected, unless such Executory Contract or Unexpired Lease:  (i) is identified on an Assumed Executory Contracts and Unexpired Leases Schedule; (ii) is the subject of a motion to assume (or assume and assign) such Executory Contract that is pending on the Confirmation Date; (iii) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; (iv) is a directors and officers insurance policy; (v) is a Third-Party Sale Transaction Document; or (vi) is to be assumed by the Debtors and assigned in connection with a Third-Party Sale Transaction and pursuant to the Third-Party Sale Transaction Documents.

44.    To ensure that counterparties to Executory Contracts and Unexpired Leases receive notice of the assumption of their Executory Contract or Unexpired Lease, if any, pursuant to the Plan, the Debtors will mail the Assumption Notice no later than fourteen (14) days before the Confirmation Hearing.  Accordingly, the Assumption Notice should be approved.

**III.    The Bankruptcy Court Should Approve the Solicitation and Voting Procedures**.

45.    Section 1126(c) of the Bankruptcy Code provides that:

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designed under subsection (e) of this section, that have accepted or rejected such plan.

11 U.S.C. § 1126(c).

46.    Additionally, Bankruptcy Rule 3018(c) provides, in part, that "[a]n acceptance or rejection [of a plan] shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent, and conform to the appropriate

Official Form." Fed. R. Bankr. P. 3018(c). Consistent with these requirements, the Debtors propose using the Solicitation and Voting Procedures. The Solicitation and Voting Procedures include specific voting and tabulation requirements and procedures, as described below.

### A.   Completion of Ballots.

47.     To ease and clarify the process of tabulating all votes received, the Debtors propose that a Ballot be counted in determining the acceptance or rejection of the Plan only if it satisfies certain criteria.  Specifically, the Solicitation and Voting Procedures provide that the Debtors will not count a Ballot if it is, among other things, submitted by a Holder of a Claim or Interest that is not entitled to vote on the Plan or incomplete. Further, the Debtors may waive any defects or irregularities as to any particular Ballot at any time, either before or after the close of voting, and any such waivers shall be documented in the Voting Report.

### B.   General Ballot Tabulation and Voting Procedures.

48.     The proposed Solicitation and Voting Procedures set forth specific criteria with respect to the general tabulation of Ballots, voting procedures applicable to Holders of Claims, and tabulation of such votes.  The Debtors believe that the proposed Solicitation and Voting Procedures will facilitate the Plan confirmation process. Specifically, the procedures will clarify any obligations of Holders of Claims entitled to vote to accept or reject the Plan and will create a straightforward process by which the Debtors can determine whether they have satisfied the numerosity and amount requirements of section 1126(c) of the Bankruptcy Code.  Accordingly, the Debtors submit that the Solicitation and Voting Procedures are in the best interests of the Debtors' Estates, Holders of Claims or Interests, and other parties in interest, and that good cause supports the relief requested herein.

**IV.     The Bankruptcy Court Should Approve the Procedures for Confirming the Plan**.

**A.     The Confirmation Hearing Date**.

49.     Section 1128 of the Bankruptcy Code provides that "[a]fter notice, the court shall hold a hearing on confirmation of a plan" and provides that parties in interest can object to confirmation. 11 U.S.C. § 1128. Bankruptcy Rule 3017(a) also requires that the court "hold a hearing on at least 28 days' notice to the debtor, creditors, equity security holders and other parties in interest . . . to consider the disclosure statement and any objections or modifications thereto." Fed. R. Bankr. P. 3017(a). Additionally, Bankruptcy Rule 3017(c) provides that, on or before approval of a disclosure statement, a court shall fix a time for the hearing on confirmation of a plan. Fed. R. Bankr. P. 3017(c). Further, Bankruptcy Rule 2002(b) provides that notice shall be given to "the debtor, the trustee, all creditors and indenture trustees not less than 28 days . . . by mail of the time fixed . . . for filing objections and the hearing to consider approval of a disclosure statement or, under § 1125(f), to make a final determination whether the plan provides adequate information so that a separate disclosure statement is not necessary." Fed. R. Bankr. P. 2002(b).

50.     In accordance with Bankruptcy Rules 2002 and 3017 and section 1128 of the Bankruptcy Code, the Debtors request that the Bankruptcy Court establish **November 5, 2025**, as the Confirmation Hearing Date. The Debtors further request that the Confirmation Hearing may be continued from time to time by the Bankruptcy Court or the Plan Proponents without further notice to parties in interest other than announcement of such adjournment in open court and/or filing a notice of adjournment with the Bankruptcy Court and serving such notice on the 2002 List.

**B.     The Bankruptcy Court Should Approve the Procedures for Filing Objections to Confirmation of the Plan**.

51.     Bankruptcy Rule 2002 requires no less than twenty-eight days' notice to all Holders of Claims of the time fixed for filing objections to the hearing on confirmation of a Chapter 11

plan.  Fed. R. Bankr. P. 2002(b), (d).  The Debtors request that the Bankruptcy Court establish **October 22, 2025, at 4:00 p.m., prevailing Eastern Time**, as the Plan Objection Deadline.

52.    The Debtors also request that the Bankruptcy Court direct the manner in which parties in interest may object to confirmation of the Plan.  Pursuant to Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court." Fed. R. Bankr. P. 3020(b)(1).  The Confirmation Hearing Notice will require that objections to confirmation of the Plan or requests for modifications to the Plan, if any, must:

   a.    be in writing;

   b.    conform to the Bankruptcy Rules, the Local Rules, and any orders of the Bankruptcy Court;

   c.    state, with particularity, the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; and

   d.    be filed with the Bankruptcy Court and served upon the notice parties so as to be **actually received** on or before the Plan Objection Deadline.

53.    The Debtors believe that the Plan Objection Deadline for filing and service of objections (and proposed modifications, if any) will afford the Bankruptcy Court, the Debtors, and other parties in interest reasonable time to consider the objections and proposed modifications prior to the Confirmation Hearing.

54.    Moreover, the Confirmation Hearing and any dates on the Confirmation Timeline may be adjourned or continued from time to time by the Bankruptcy Court or the Plan Proponents, without further notice other than adjournments announced in open court or as indicated in any notice of adjournment filed by the Debtors with the Bankruptcy Court and served on the 2002 List.

### Non-Substantive Modifications

55.    Subject to the consent rights set forth in the Plan, the Debtors request authorization to make changes to the Plan, Disclosure Statement, Solicitation and Voting Procedures, Ballot,

Solicitation Packages, Notices of Non-Voting Status and Opt-In Form, Confirmation Hearing Notice, Publication Notice, Cover Letter, Plan Supplement Notice, Assumption Notice, and any notice attached to the Order, and any related documents without further order of the Bankruptcy Court, including formatting changes, changes to correct typographical and grammatical errors, if any, and to make conforming changes to the Disclosure Statement, the Plan, and any other materials (including the appendices thereto) in the Solicitation Packages before distribution.

**<u>Reservation of Rights</u>**

56.     Nothing contained in this motion or any order granting the relief requested in this motion, and no action taken by the Debtors pursuant to the relief requested or granted (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, priority, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this motion or any order granting the relief requested by this motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

## Notice

57.     The Debtors will provide notice of this motion to:    (a) the U.S. Trustee; (b) the Committee and Akin Gump Strauss Hauer & Feld LLP as counsel to the Committee; (c) the office of the attorney general for each of the states in which the Debtors operate; (d) United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) the United States Securities and Exchange Commission; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").  In light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

58.     No prior motion for the relief requested herein has been made to this Bankruptcy Court or any other court.

**WHEREFORE**, the Debtors respectfully request that the Bankruptcy Court enter the

Order, substantially in the form attached hereto as **Exhibit A** granting the relief requested herein.

Dated:  July 29, 2025
Wilmington, Delaware

*/s/ Laura Davis Jones*

| | |
|---|---|
| Laura Davis Jones (DE Bar No. 2436) | Patrick J. Nash Jr., P.C. (admitted *pro hac vice*) |
| Timothy P. Cairns (DE Bar No. 4228) | David Seligman, P.C. (admitted *pro hac vice*) |
| Peter J. Keane (DE Bar No. 5503) | **KIRKLAND & ELLIS LLP** |
| Edward Corma (DE Bar No. 6718) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| **PACHULSKI STANG ZIEHL & JONES LLP** | 333 West Wolf Point Plaza |
| 919 North Market Street, 17th Floor | Chicago, Illinois 60654 |

Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
Peter J. Keane (DE Bar No. 5503)
Edward Corma (DE Bar No. 6718)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19801
Telephone:        (302) 652-4100
Facsimile:         (302) 652-4400
Email:              ljones@pszjlaw.com
                         tcairns@pszjlaw.com
                         pkeane@pszjlaw.com
                         ecorma@pszjlaw.com

Patrick J. Nash Jr., P.C. (admitted *pro hac vice*)
David Seligman, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:        (312) 862-2000
Facsimile:         (312) 862-2200
Email:              patrick.nash@kirkland.com
                         david.seligman@kirkland.com

-and-

Allyson B. Smith (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:        (212) 446-4800
Facsimile:         (212) 446-4900
Email:              allyson.smith@kirkland.com

*Co-Counsel for the Debtors and Debtors in Possession*